Presented to the Court by the foreman of the Grand Jury in open Court, in the presence of the Grand Jury and FILED in the U.S. DISTRICT COURT at Seattle, Washington.

October 7 20 26
Joshua C. Lewis
By [signature] Deputy

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>CRISTIAN POPESCU,<br>Defendant. | NO. CR26-191 JHC<br><br>**INDICTMENT** |

The Grand Jury charges that:

**COUNTS 1-10**

**(Wire Fraud)**

**A. Overview**

1. Defendant Cristian Popescu was founder and Chief Executive Officer of a Bellevue, Washington-based company called Followone, Inc. Popescu told investors and others that Followone offered an internet platform that allowed users to buy and sell goods and services, including cars, real estate, health care, food, and travel. On Followone's website, Popescu promoted the company as "the global online marketplace and social network."



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

2. Popescu used lies and deception to create the appearance that Followone had the capacity to execute transactions in a wide variety of markets; had earned millions of dollars in revenues; had substantially grown the value of its shareholders' investments; and was about to be listed on the Nasdaq stock exchange. In fact, Followone had minimal operations; generated no revenue; did not have the capacity to allow users to buy or sell anything; and was never close to listing on a public stock exchange.

3. Popescu was also the pastor of a Kirkland, Washington Christian congregation called Passion for Christ. Popescu used this trusted position to manipulate Passion for Christ congregants and others into giving Popescu money, which Popescu said would be invested in Followone. Popescu told investors that God had chosen them to invest in the company and that doing so would further the church's mission. Popescu told investors their investments would remain within Followone and that they could withdraw their money at any time. Popescu obtained at least $13 million in investments and loans from investors.

4. Contrary to his representations to investors, Popescu diverted millions of dollars of investor money from Followone to his own personal consumption and stock trading. As a result of his fraud, Popescu's investors lost most or all their investments.

**B. The Scheme to Defraud**

5. Beginning no later than July 2015, in King County, within the Western District of Washington, and elsewhere, Cristian Popescu, and others known and unknown to the Grand Jury, devised and intended to devise a scheme and artifice to defraud, and to obtain money and property, by means of materially false and fraudulent pretenses, representations, promises, and omissions.

6. The essence of the scheme and artifice to defraud was for Cristian Popescu to enrich himself by persuading investors to give him money, purportedly for the purchase of Followone stock or personal loans. Popescu used misrepresentations, false promises, and omissions about Followone, its purported operations, and the use of the



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

investment proceeds to trick investors into investing in the company. Cristian Popescu then converted the investment funds to his own personal use.

**C. Manner and Means**

The following conduct was part of the scheme and artifice to defraud:

**1. Popescu Exploited his Position as Pastor to Solicit Millions of Dollars in Investments and Loans.**

7. Popescu solicited people with money (victims) who he knew were likely to trust him because of his role in the church. Popescu told victims God had spoken to him and had told Popescu the victims had been chosen to invest in Followone.

8. Popescu told prospective investors Followone had developed an online platform that leveraged a "secret technology" that allowed buyers and sellers to communicate and execute sales transactions. Popescu claimed Followone could facilitate transactions in a variety of different markets, which Popescu called "verticals," and which Popescu said included real estate, cars, travel, and healthcare. Popescu said Followone would generate revenue by selling subscriptions to use the Followone platform.

9. Popescu falsely told the investors that Followone had been valued at hundreds of millions of dollars, and that buyers had made multiple offers to purchase the company. Popescu told investors God had told him not to sell Followone, but instead to use its profits to benefit the community, especially children and the elderly. Popescu told investors that, by investing in Followone, they could participate in benefiting the church and community.

10. Popescu falsely and repeatedly told investors Followone was preparing for a direct listing on the Nasdaq stock exchange, which was likely to happen in a matter of months, and which would result in substantial gains for Followone and its investors.

11. Popescu told some investors their investment funds would be placed in a separate account, where the funds would remain secure and in place for the life of the



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

investment. Popescu said the purpose of the funds was to show that Followone had large cash reserves. Popescu said the investors could redeem their investments at any time. Popescu told other investors that their funds would be used for Followone business purposes.

12. Popescu was highly secretive in his communications with investors. He required them to sign nondisclosure agreements, often refused to speak on the phone about Followone, and required investors to use encrypted messaging services. When Popescu met in person with investors, he required them to turn off their phones and recording devices such as Alexa speakers.

13. Popescu issued press releases, which were displayed and maintained on Followone's website, that used false and misleading representations and omissions of material facts to overstate Followone's value and the extent of its operations. For example, an August 2016 press release represented that the Followone's "all-in-one platform has unlimited applications for almost anyone who is online, from posting and browsing job applications, creating product listings to sell, gaining visibility to full-fledged e-commerce." Another press release reported that Followone had hired experienced software engineers from major companies like Amazon and Microsoft, and that the website "feature[d] a vast array of product categories to browse or upload products, sell and invest in, from clothes and apparel, education, training, engineering, restaurants, manufacturing, medical and real estate to rental, non-profit, computers, retail and filmmaking." Popescu did not disclose that no transactions were executed over the website.

14. After investors invested with Followone, Popescu repeatedly returned to those investors to solicit more investment money. When seeking these additional investments, Popescu typically told investors that Followone was just months from being listed on the Nasdaq stock exchange and needed the money to complete the process.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

15. To induce additional investments, Popescu told some investors they could become Followone board members if they reached a certain investment threshold, such as $1 million. After these investors invested the threshold amount, Popescu designated the investors as "board members" in name only, and never provided the "board members" with Followone financial information or any decision-making or oversight authority.

16. Popescu encouraged investors to generate money to invest by drawing on their savings, taking out personal or home equity loans, and liquidating college funds and retirement accounts. For investors who liquidated retirement accounts, Popescu instructed the investors to open self-directed Individual Retirement Accounts (IRAs) at a specific investment company and to transfer the proceeds of their retirement account into the self-directed IRA. Popescu then instructed the investors to transfer the proceeds from the self-directed IRA account to a Followone account controlled by Popescu.

17. Popescu used false representations to try to induce an investment bank (Investment Bank 1) to facilitate a $50 million public offering of Followone stock. For example, in October 2019, Popescu represented to a member of Investment Bank 1's management that Followone had earned $4.1 million in revenue through the first three quarters of the year, when in fact Followone had earned no revenue and had no means of doing so. Popescu estimated to Investment Bank 1 that, if Followone obtained the financing, Followone would earn a minimum of $61 million, and a maximum of $84 million, in 2020. Based on Popescu's fraudulent representations about Followone's value, Investment Bank 1 accepted Followone stock as compensation for investment banking services.

18. In October 2024, Popescu attempted to persuade Investment Bank 1 to make a $3 million loan for Followone. To induce Investment Bank 1 to make the loan, Popescu falsely represented that private investors had committed to invest $50 million in Followone.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**2. Popescu Created the Illusion of a Successful Business.**

19. Popescu used lies, deception, and the omission of material information to make it appear to his investors that Followone was a successful business with extensive operations.

20. For example, Popescu assigned high-level titles such as Chief Operating Officer, Chief Technology Officer, Vice President, and Healthcare Executive Officer to lower-level employees or affiliates who did not actually perform the job functions typically associated with those roles. Popescu overstated the qualifications of these "officers" and their involvement in Followone to make it appear that Followone was a sophisticated business with significant operations, when it was not. Similarly, Popescu held out certain investors and others as "board members" to make it appear the company functioned under board oversight, when in fact the "board members" were provided no financial information or oversight authority, and lacked the qualifications to serve as directors of a technology company.

21. Popescu directed computer programmers to develop web pages that created the illusion that Followone was facilitating transactions in a wide array of markets. Popescu purchased access to publicly available sales databases and used the data to make it appear that commerce was being conducted on the Followone platform. For example, Popescu purchased data from Marketcheck, a company that provides car dealers with listings of cars for sale. Popescu then directed employees to post the Marketcheck listings on Followone's website, creating the appearance that cars were listed for sale on the Followone site. Popescu caused a press release to be issued stating that Followone offered "over 6M new and used auto listings from 50K U.S. auto dealers and 500k new and used auto listing from 4.5k Canadian auto dealers." As Popescu knew, no cars were actually purchased or sold on the Followone website, and the website did not have the capacity to execute such transactions. Popescu instructed employees not to disclose Followone's use of Marketcheck data.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

22. Similarly, Popescu persuaded an associate who was a real estate broker to post real estate listings obtained through a real estate multiple listing service on the Followone website, creating the appearance that real estate was being offered for sale on the site. Popescu caused a press release to be issued stating that Followone "successfully launched Followone Real Estate, a platform dedicated to help Followone users to sell or find their next home, as well as businesses to rent/sell or find their next office location." As Popescu knew, no real estate transactions were executed over the Followone website, and the website lacked the capacity to execute such transactions.

23. Popescu leased an expensive office suite in downtown Bellevue, furnished the office with expensive furniture, and invited investors and prospective investors to the office. Popescu issued a press release announcing the new "headquarters," which he said would be staffed with over 20 new employees, including "sales representatives, customer care representatives [and software] developers." In fact, Followone employed only approximately three employees other than Popescu, and those employees were engaged not in facilitating transactions, but merely in creating the inoperative webpages that created the illusion of an operative internet commerce site.

24. Popescu used shell companies under his control to create the appearance that Followone was conducting genuine business with third parties, when he knew it was not. To create this illusion, Popescu persuaded others to open shell companies with names that made the shell companies appear to be genuine web commerce companies. Popescu then caused Followone to issue fraudulent invoices to the shell companies, falsely stating that Followone had performed hundreds of thousands of dollars' worth of development services for those shell companies. Popescu transferred funds from Followone to an intermediary company Popescu controlled called ADSB2B. Popescu then transferred hundreds of thousands of dollars at a time from ADSB2B to the shell companies and directed the "owners" of the shell companies to transfer the same money back to Followone, supposedly as payment for the fraudulent invoices. These circular



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

transactions made it appear that the shell companies were paying Followone for services provided, when in fact no services had been provided, and the money funding the "payments" to Followone had in fact originated from Followone.

**3. Popescu Lulled His Investors Into the False Belief Their Investments Were Safe.**

25. Popescu created an investor website that tricked investors into believing their investments in Followone were safe, and in fact had grown substantially. When investors logged into the investor website, the website displayed a purported current value for their Followone "investment." The website assigned wildly unrealistic values to investors' holdings, leading investors to believe their investments were worth millions or tens of millions of dollars. At one point, Popescu based the investment values on a $1.4 billion valuation for Followone, when in fact, as Popescu knew, the company had little or no value because it had no significant assets, no revenues, and no prospect of revenues.

26. Popescu failed to disclose to the investors that, for a long period of Followone's existence, the company was in default of its lease for failure to pay rent. Popescu failed to disclose that Followone was evicted from the office with a past-due balance owed to the landlord of over $350,000. Popescu similarly failed to tell investors that the company stopped paying its employees because of a lack of cash.

27. When investors requested that Popescu return their funds as promised, Popescu falsely told them that doing so would interfere with an ongoing audit or with the process to be listed on the Nasdaq stock exchange. When investors pressed Popescu for more information about Followone or expressed doubts about Popescu's representations, Popescu invoked his position in the church, became irate, and told the investors they were demonically possessed.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**4. Popescu's Misuse of Investor Funds**

28. Contrary to his representations to investors, Popescu did not retain investors' investment funds in a separate account, and those funds were not available to be returned on demand. Instead, Popescu funneled millions of dollars of investor money to his own personal use.

29. For example, after persuading investors to purchase Followone stock, Popescu frequently transferred the investors' funds—often hundreds of thousands of dollars at a time—into a personal checking account held in the name of Popescu and his wife. Popescu then used those funds for personal use or to fund Popescu's personal investment account. Popescu transferred over $4.5 million of Followone funds to his personal bank accounts. Popescu also paid himself over $1 million in Followone wages between 2017 and 2024. In addition, Popescu used Followone funds to pay his wife over $300,000 in wages even though she was not a genuine employee of Followone.

30. Popescu also used Followone funds to directly pay personal expenses. For example, Popescu transferred nearly $900,000 of Followone funds to his personal stock trading account. In addition, Popescu used approximately $1 million of Followone funds to pay his own personal credit card debt.

**D. Execution of the Scheme to Defraud**

31. Popescu used interstate wire transmissions to orchestrate his scheme to defraud. For example, Popescu directed investors to send investment money to Followone's Bank of America account via teller transfer, check deposit, and wire transfer in transactions initiated from Washington state. Each of those transactions involved an interstate wire transmission to a Bank of America server outside of Washington state. Popescu also communicated with prospective investors and others via email transmissions that were processed through servers outside of Washington state.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

32. On or about the dates set forth below, at King County, and elsewhere, for the purpose of executing and attempting to execute the scheme and artifice to defraud, CRISTIAN POPESCU knowingly transmitted, and caused to be transmitted, by wire communication in interstate and foreign commerce, the following signs, signals, pictures and sounds, each transmission of which constitutes a separate count of this Indictment:

| Count | Date | Wire Transmission |
|---|---|---|
| 1 | May 13, 2022 | Deposit of $598,500 check from investor I.A. into Followone Bank of America account x6209 |
| 2 | September 2, 2022 | $200,000 teller transfer by investors A.R. and M.R. to Followone Bank of America account x6209 |
| 3 | October 17, 2022 | $300,000 wire from investor I.B. to Followone Bank of America account x6209 |
| 4 | December 21, 2022 | $497,000 teller transfer by investors A.R. and M.R. to Followone Bank of America account x6209 |
| 5 | December 29, 2022 | $999,998.69 wire from investor I.A. to Followone Bank of America account x6209 |
| 6 | January 13, 2023 | $350,000 teller transfer by investors A.R. and M.R. to Followone Bank of America account x6209 |
| 7 | July 13, 2023 | Email from Popescu Followone account to potential investor V.B. soliciting investment |
| 8 | September 26, 2023 | Email from Popescu Followone account to investor J.M attaching private placement memorandum |
| 9 | October 11, 2024 | Email from Popescu Followone account to institutional investor M.G. seeking loan |
| 10 | April 30, 2026 | $50,000 wire from investor S.G. to Followone Bank of America account x6209 |

All in violation of Title 18, United States Code, Section 1343 and Section 2.

**<u>COUNTS 11-15</u>**

**(Money Laundering)**

33. The allegations set forth in Paragraphs 1 through 32 of this Indictment are re-alleged and incorporated as if fully set forth herein.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

34. On or about the dates set forth below, in King County, within the Western District of Washington, CRISTIAN POPESCU knowingly and willfully engaged in monetary transactions affecting interstate commerce in criminally-derived property of a value greater than $10,000, that is, the withdrawal, deposit, and transfer of funds from and to the financial institutions identified below, such property having been derived from specified unlawful activities, that is, wire fraud:

| Count | Date | Monetary Transaction |
|---|---|---|
| 11 | May 17, 2022 | $800,000 transfer containing investment funds from Followone Bank of America Account x5052 to Popescu Bank of America Account x9039 |
| 12 | October 19, 2022 | $100,000 transfer containing investment funds from Followone Bank of America account x5052 personal Popescu Bank account 9039 |
| 13 | January 11, 2023 | $1 million transfer containing investment funds from Followone Bank of America account x5052 to Popescu Bank of America Account x9039 |
| 14 | January 19, 2023 | $100,000 wire transfer containing investment funds from Followone Bank of America account x6209 to Popescu E*Trade account x0715 |
| 15 | October 22, 2024 | $100,000 transfer containing investment funds from Popescu's Bank of America account x9039 to Popescu E*Trade account x1209 |

All in violation of Title 18, United States Code, Section 1957 and Section 2.

## FORFEITURE ALLEGATION

The allegations contained in Counts 1-15 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture.

Upon conviction of any of the offenses alleged in Counts 1-10, Cristian Popescu shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), by way of Title 28, United States Code, Section 2461(c), any property that



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

constitutes or is traceable to proceeds of the offense, including but not limited to a sum of money reflecting the proceeds the Defendant obtained as result of the offense.

Upon conviction of any of the offenses alleged in Counts 11-15, Cristian Popescu shall forfeit to the United States any property involved in the offense. All such property is forfeitable pursuant to Title 18, United States Code, Section 982(a)(1), including but not limited to a sum of money reflecting the property involved in the offense.

//

//



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**Substitute Assets.** If any of the above-described forfeitable property, as a result of any act or omission of the defendant,

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or,

e. has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States to seek the forfeiture of any other property of the defendant, up to the value of the above-described forfeitable property, pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL:
DATED: October 7, 2026

*Signature of Foreperson redacted pursuant to the policy of the Judicial Conference of the United States.*

FOREPERSON

SARAH Y. VOGEL
Criminal Chief Assistant United States Attorney

SETH WILKINSON
Assistant United States Attorney



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970